MULLIN HOARD & BROWN, L.L.P.
David R. Langston, SBN: 11923800
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: 806-765-7491
Telefax: 806-765-0553
Email: drl@mhba.com
*Attorneys for Debtor, MP Southpark*
*Pharmacy, LLC d/b/a Myers Drug and*
*Micah and Krystan Pratt*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MP SOUTHPARK PHARMACY,** | § | **Case No. 24-50146-RLJ-11** |
| **LLC d/b/a MYERS DRUG** | § | |
| | § | |
| **Debtor.** | § | |
| | § | |
| IN RE: | § | |
| | § | |
| | § | |
| **MICAH G. PRATT and wife,** | § | **Case No. 24-50147-RLJ-11** |
| **KRYSTAN L. PRATT** | § | **(Jointly Administered Under** |
| | § | **Case No. 24-50146-RLJ-11)** |
| **Debtors.** | § | |

## EXPEDITED MOTION FOR AUTHORITY TO SELL PERSONAL PROPERTY ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

NOW COME, MP SOUTHPARK PHARMACY, LLC and MICAH AND KRYSTEN

PRATT (the "**Debtors**"), the Debtors in the above-referenced bankruptcy proceeding, and files this,

their Expedited Motion For Authority To Sell Personal Property Assets of the Estate Free and Clear

of Liens, pursuant to the provisions of 11 U.S.C Sections 363(b) and 363(f) and in accordance with

Bankruptcy Rules of Procedure 6004(c), and in support of such Motion would respectfully show the

Court as follows:

**I.**
**Jurisdiction and Venue**

1.      The relief requested in this Motion is sought pursuant to 11 U.S.C. § 365(a). This is a core proceeding and this Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334 and 157, and 11 U.S.C. Sections 363 and 365.

**II.**
**Factual Background**

2.      MP Southpark Pharmacy, LLC and Micah and Krysten Pratt are the Debtors-in-Possession in the above-referenced bankruptcy proceedings.

3.      The Debtors filed for relief under Chapter 11 of the United States Bankruptcy Code on June 21, 2024 (the "Petition Date"). The Debtors elected to proceed under Subchapter V of the Bankruptcy Code and continue to operate their business as debtor-in-possession pursuant to § 1184 of the Bankruptcy Code.

4.      An Order for Joint Administration of these cases was entered on June 26, 2024.

5.      This is a core proceeding, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334 and 157, and 11 U.S.C. Sections 105 and 365.

6.      The Debtor, MP Southpark Pharmacy, LLC d/b/a Myers Drug is a limited liability company organized in the State of Texas which operates a pharmacy, drug store and gift shop in San Angelo, Texas. Debtor, Micah Pratt, is the President.  As reflected below, it has other locations in Menard and Sterling City, Texas from which it provides pharmaceutical services to its patrons.

**III.**
**Relief Requested**

7.      The Debtors, wish to sell certain tangible and intangible personal property assets consisting of inventory, furniture, fixtures and equipment used by the Debtor in connection with

the operations of the retail drug stores and pharmacies at its locations in San Angelo, Menard and Sterling City, Texas (the "Locations"), as well as intangible assets in the form of Prescription Files (the "Property"), to Pay and Save, Inc. d/b/a Lowe's Grocery Stores ("Lowe's"). Lowe's operates a chain of grocery stores in rural towns throughout the states of Texas and New Mexico. Lowe's has recently started to acquire independent pharmacies in the towns it serves. Lowe's recently purchased a pharmacy owned by a related entity owned by Michael Pratt that owned and operated a pharmacy in Littlefield, Texas. Upon the closing of the sale Mr. Pratt became employed by Lowe's. Now, Lowe's has signed an Asset Purchase Agreement covering all the Locations of Myer's Drug. The Debtor expects the sale of these assets to bring in net proceeds of between $600,000 and $1,000,000.00.

8.      Live Oak Banking Company ("Live Oak") asserts a first lien security interest in real property owned by Debtor's affiliate, Pratt II Real Estate, LLC and a first lien security interest in Debtor's personal property assets to secure the repayment of a debt in the estimated sum of $1,283,856.00. An intercreditor agreement between Live Oak and Cardinal Health subordinated Cardinal Health's first lien to the financing lien of Live Oak.

9.      Cardinal Health ("Cardinal") asserts a second lien security interest in Debtor's personal property to secure the repayment of a debt in the estimated sum of $108,331.00 more or less. Debtor asserts that considering the collateral values of the real estate which secures the repayment of the Live Oak indebtedness along with that of the personal property against which it holds a lien in Debtor's case there may be sufficient equity after the payoff of Live Oak to satisfy the claim of Cardinal.

10.     The Small Business Administration ("SBA") asserts a third lien security interest in

Debtor's personal property assets to secure the repayment of a debt in the estimated sum of $528,439.00.

11.      Additionally, the Debtors would disclose that a Promissory Note and Security Agreement in favor of Menard Industrial Development Corporation ("Menard") was executed by the Debtor, MP Southpark Pharmacy, LLC, on or about June 1, 2019. Currently there is an amount owing to Menard of approximately $20,542.21.  However, the Debtors have conducted a UCC 11 search with the Texas Secretary of State and do not find where a UCC Financing Statement was filed by Menard to perfect their lien. Therefore, the Debtors do not believe Menard holds a security interest in the personal property of the Debtors.

12.      The Debtors intend to sell the Property free and clear of all liens at a private sale to Lowe's, for a total estimated sales price of $600,000.00, including the inventory of the businesses as of the date of the closing estimated to total between $250,000 and $300,000 and the State of Texas Pharmacy License having a value of $300,000, all as set forth in the Asset Purchase Agreement attached hereto as Exhibit "A". Excluded from the sale will be the accounts receivable and gift shop inventory owned by the Locations which will be retained and sold or collected by the Estate. The Debtors believe such assets to have an estimated value of $200,000.

13.       Upon the sale of the Property, the Debtors will execute any and all documents necessary to effectuate the transfer of said Property.

14.      Pursuant to the provisions of 11 U.S.C. Section 363(f) as well as the provisions of Bankruptcy Rule of Procedure 6004(c) the Debtors desire to sell the Property described herein free and clear of any and all interest with the liens against such property to attach to the proceeds and to be distributed to the secured creditors in accordance with their lien positions.

15.      Any surplus funds over and above the amount owed to extinguish the debts owing to

Live Oak, Cardinal, and SBA will be paid over to the Debtors.

**REQUEST FOR EXPEDITED HEARING AND SHORTENED NOTICE**

16.     The Debtors are seeking authority to sell this property on an expedited basis due to the fact that the Debtors have limited funds to operate the business and wants to get the property sold so that the customers can get appropriately serviced and their prescriptions filled and that any delays caused by the Debtors bankruptcy proceeding will not harm the value of the enterprise. Furthermore, the only real parties in interest on this matter are Live Oak, Cardinal and SBA and Debtor does not anticipate any objection from them.

17.     The failure to be able to sell the Property set forth above will cause immediate and irreparable harm to the assets of the Debtors and will result in severe damage and diminution to the value of its assets and estate.

18.     Accordingly, pursuant to Bankruptcy Rule 9006, Debtors seek the shortening of the notice period for Debtor's Motion.  Debtor respectfully requests that the notice period for the hearing on their Motion be shortened to fifteen (15) days, and that the Court finds service via email, facsimile, or regular U.S. Mail to the United States Trustee, Live Oak, Cardinal, SBA and Menard, is sufficient under the circumstances in light of the nature of the relief requested, the Debtor submits that no other or further notice need be given, and the Court set the Motion for hearing on an expedited basis.

WHEREFORE, PREMISES CONSIDERED, The Debtors pray that the Court determine that adequate notice and opportunity for hearing of this Motion has been given to creditors and parties in interest in this bankruptcy case, and that after considering the merits of such Motion that the Court grant the Debtors authority to sell the personal property described herein free and clear of any and all interest with the liens against such property to attach to the proceeds and to be distributed to the

lienholders in accordance with the orders of the Bankruptcy Court, and for such other and further

relief whether at law or in equity as the Court may deem necessary and proper.

## SHORTENED NOTICE OF OPPORTUNITY FOR OBJECTION AND NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN THAT EMERGENCY CONSIDERATION AND SHORTENED NOTICE HAVE BEEN REQUESTED. IF EMERGENCY CONSIDERATION IS GRANTED A HEARING ON THIS MOTION WILL BE HELD ON <u>WEDNESDAY, AUGUST 28, 2024 AT 1:30 P.M.</u>, IN THE U.S. COURTHOUSE, BANKRUPTCY COURTROOM, ROOM 314, 1205 TEXAS AVENUE, LUBBOCK, TEXAS 79401. PARTIES WHO WOULD LIKE TO PARTICIPATE VIA VIDEO (WEBEX) OR BY TELEPHONE MUST OBTAIN PERMISSION FROM THE COURT.**

**YOU WILL HAVE UNTIL <u>TUESDAY, AUGUST 27, 2024</u> TO FILE YOUR OBJECTION TO THIS MOTION.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK AT THE U.S. BANKRUPTCY CLERK'S OFFICE AT 1205 TEXAS AVE., ROOM 306, LUBBOCK, TEXAS, 79401, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN.**

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
Email: drl@mhba.com

 /s/ David R. Langston
David R. Langston, SBN: 11923800
***Attorneys for Debtors, MP Southpark Pharmacy, LLC d/b/a Myers Drug and Micah & Krystan Pratt***

## CERTIFICATE OF CONFERENCE

I certify that on the 8th day of August, I conferred with Mr. Behrooz Vida, the Subchapter V Trustee, as well as Toni Townsend, counsel for Live Oak, Dawn Theiss, counsel for SBA and Erin Gapinski, counsel for Cardinal regarding the filing of this Motion and all confirmed that they do not oppose the relief requested.

/s/ David R. Langston
David R. Langston

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Motion was served on the following parties in interest via ECF and/or U.S. Mail postage prepaid or facsimile, on this 12th day of August, 2024:

1.  MP Southpark Pharmacy
    Attn: Micah Pratt
    1506 A. South Sunset
    Littlefield, TX 79339
    ***Debtor***

2.  Erin Schmidt
    U.S. Trustee's Office
    1100 Commerce St., Room 9C60
    Dallas, Texas 75242

3.  Behrooz P. Vida
    The Vida Law Firm, PLLC
    3000 Central Drive
    Bedford, TX 76021
    ***Subchapter V Trustee***

4.  Toni Townsend
    McCalla Raymer Leibert Pierce
    Bankruptcy Department
    1544 Old Alabama Road
    Roswell, GA 30076
    Toni.Townsend@mccalla.com
    ***Attorneys for Live Oak Banking Company***

5.  Dawn Whalen Theiss
    U.S. Attorney's Office
    1100 Commerce Street, Third Floor
    Dallas, TX 75242-1699
    dawn.theiss@usdoj.gov

*Attorneys for SBA*

6.     Erin Gapinski
Cardinal Health
7000 Cardinal Place
Dublin, OH 43017
erin.gapinski@cardinalhealth.com
***Attorney for Cardinal Health***

7.     Menard Industrial Development Corporation
P.O. Box 176
Menard, Texas 76859

8.     All parties listed on the attached mailing matrix.

9.     All parties receiving ECF Notice in this case.

/s/ David R. Langston_____
David R. Langston

Micah & Krystan Pratt
MP Southpark Pharmacy
203 East 26th St.
Littlefield, Texas 79339

Erin Schmidt
U.S. Trustee's Office
1100 Commerce St., Room 9C60
Dallas, Texas 75242

Behrooz P. Vida
The Vida Law Firm, PLLC
3000 Central Drive
Bedford, TX 76021

Dawn Whalen Theiss
U.S. Attorney's Office
Northern District of Texas
1100 Commerce Street, Third
Floor
Dallas, TX 75242-1699

Academy of Intergrative
Medicine
410 Walker St.
Woodbine, IA 51579

Altium Heathcare, Inc.
P.O Box 505525
Saint Louis, MO 63150

American Breast Care, LP
2140 Newmarket Pkwy, SSE
Marietta, GA 30067-8477

American Express
P.O. Box 6031
Carol Stream, IL 60197

AT&T Mobility
P.O. Box 6463
Carol Stream, IL 60197-
6463

Barbour Publishing
1810 Barbour De Se
Uhrichsville, OH 44683

Capital One
P.O. Box 30285
Salt Lake City, UT 84130

Cardinal Health
7000 Cardinal Pl
Dublin, OH 43017

Cardinal Health - San
Angelo
c/o Bank of America
P.O. Box 847384
Dallas, TX 75284

Cardinal Health - Sterling
c/o Bank of America
P.O. Box 847384
Dallas, TX 75284

Cardinal Health 110, LLC
c/o Bank of America
P.O. Box 847384
Dallas, TX 75284

Cardinal MHA
c/o Bank of America
P.O. Box 847384
Dallas, TX 75284

Clinic Networking, LLC
5830 NW Expressway, #144
Oklahoma City, OK 73132

Doug and Melissa
Chadwick
13064 Rainier Dr.
Woodway, TX 76712

Dr. Squatch Soap Co
4275 Thunderbird Lane
Fairfield, OH 45014-5483

Euroscrubby
P.O. Box 173
Ontario L1A 3W3
CANADA

FFF Enterprises, Inc.
P.o. Box 840150
Los Angeles, CA 90084-
0150

Golden Technologies
401 Britdge St.
Old Forge, PA 18518

Internal Revenue Service
Special Procedures - Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
1100 Commerce St.
MC 5027 DAL
Dallas, TX 75242-1100

Jennifer Murphy
McCalla Raymer Leibert
Pierce LLC
1320 Greenway Drive, Ste.
780
Irving, TX 75038

Johnathan Hinders
Brown & Fortunato
905 S. Fillmore, Suite 400
Amarillo, TX 79101

La Esperanza Clinic
34 Buick St.
San Angelo, TX 76901

Live Oak Banking Company
1757 Tiburon Dr.
Wilmington, NC 28403

LPS Management
1506 S. Sunset Ave
Littlefield, TX 79339

Mr. Bird
1320 Industrial Drive
New Braunfels, TX 78130

NRG Business
P.O. Box 660749
Dallas, TX 75266-0749

Opportunities, LLC
2401 N. Seth Child Rd.
Manhattan, KS 66503-8817

Permian Capital
3310 Fairmont St., Unit 5e
Dallas, TX 75201

RXSafe, LLC
Dept LA 24195
Pasadena, CA 91185-4195

Sam's Club
P.O. Box 960016
Orlando, FL 32896-0016

ScriptPro USA Inc.
P.O. Box 411097
Kansas City, MO 64141-
1097

ScriptSave
Medical Security Card
Company, LLC
A/R Dept. LA 24917
Pasadena, CA 91185-4917

Sigvaris Inc.
P.O. Box 2809
Peachtree City, GA 30269

Small Business
Administration
1545 Hawkins Blvd. ,
Suite 202
El Paso, TX 79925

Texas Attorney General's
Office
Bankruptcy-Collections
Division
P.O. Box 12548
Austin, TX 78711

Texas Comptroller of Public
Accounts
Revenue Accounting Division
Bankruptcy Section
P.O. Box 13528
Austin, TX 78711-3528

Texas Medical
Distributors, Inc.
P.O. Box 266
Rockdale, TX 76567

Tom Green County
Appraisal District
2302 Pulliam St.
San Angelo, TX 76905

Toni Townsend
McCalla Raymer Leibert Pierce
110 S.E. 6th Street, Suite 2400
Fort Lauderdale, FL 33301

Too Good Gourmet
2380 Grant Ave.
San Lorenzo, CA 94580

Very G - Wolfpack Brands
New Commercial Capital
Inc.
P.O. Box 847172
Los Angeles, CA 90084-
7172

Chase Southwest Airlines
P.O. Box 15298
Wilmington, DE 19850

Click N Close, Inc.
P.O. Box 2229
Addison, TX 75001

First Federal Bank
2313 Phelps Ave.
Littlefield, TX 79339

Huntington National Bank
11100 Wayzata Blvd. No. 700
Minnetonka, MN 55305-5523

Lamb County Appraisal
District
1500 E. Delano Ave.
Littlefield, TX 79339

Nelnet
121 South 13th St.
Lincoln, NE 68508

Nissan Finance
P.O. Box 660577
Dallas, TX 75266

Subaru Motor Finance
PO. Box 78232
Phoenix, AZ 85062

John Kendrick Turner
Linebarger Goggan Blair &
et al.
2777 N. Stemmons Freeway,
Ste. 1000
Dallas, Tx. 75207

Laura Monroe
Perdue Brandon Fielder
Collins & Mott, LLP
P.O. Box 817
Lubbock, Tx. 79408

Johnathan H. Hinders
Brown & Fortunato, P.C.
905 S. Fillmore, Suite 400
Amarillo, Tx. 79101

Menard Industrial
Development Corp.
P.O. Box 176
Menard, Texas 76859

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is effective as of August 1, 2024 (the "Effective Date"), by and between MP SOUTHPARK PHARMACY, LLC dba MYERS DRUG, a Texas limited liability company ("Seller") and PAY AND SAVE, INC, a Texas corporation ("Buyer"), for the purchase and sale of Seller's personal property as more set forth in this Agreement.

## RECITALS

Seller owns certain tangible and intangible personal property assets in connection with the operation of its pharmacy businesses with locations in San Angelo, Menard, and Sterling City, Texas (collectively "Locations").

Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, certain the tangible and intangible personal property assets in accordance with this Agreement.

## AGREEMENT

In consideration of the Recitals which are made a contractual part of this Agreement, the execution and delivery of this Agreement, the performance of the obligations hereunder, and other good and valuable consideration, the Parties agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF ASSETS

Section 1.01. Purchase and Sale of Assets. Subject to the terms and conditions hereof, Seller agrees to sell, convey, assign, transfer and deliver the Assets (defined below) to Buyer, and Buyer agrees to purchase, acquire, and accept, all right, title and interest in the Assets, pursuant to the terms hereof, used by Seller in connection with Seller's retail drug stores and pharmacies defined as MP Southpark Pharmacy, LLC dba Myers Drug ("Myers Drug") at all of its locations. The tangible assets that are being sold pursuant to this Agreement consist of the following personal property assets of the Locations, all machinery and equipment, furniture and fixtures and inventory used by Myers Drug in connection with the operations of the retail drug stores and pharmacies at the Locations. The term "Assets" will collectively refer to all the following:

- *Included Assets:* the intangible assets in the form of prescription files and the tangible assets in the form of inventory, furniture, fixtures, and equipment used in or necessary for the conduct of the Myers Drug business at all of its Locations ("Assets of Myers Drug") as further set forth in Exhibit A of this Agreement, along with the accounts receivable of Myers Drug's at all of the Locations of its business ("A/R of Myers Drug") as set forth in Exhibit A1.

- *Excluded Assets:* the tangible assets purchased hereunder shall specifically exclude all of those of the gift store and boutique consisting of inventory, and furniture, fixtures, and equipment of Myers Drug not used in or necessary for the conduct of Myers Drug's retail pharmacy business as well as the accounts receivable owned by Myers Drug as of the date of the closing, all as more fully set forth on Exhibit B of this Agreement (the "Excluded Assets").

**EXHIBIT "A"**

Section 1.02. Excluded Liabilities. Without regard to any liabilities with respect to the Assets to be paid at Closing, Buyer shall not assume or be obligated to pay, perform or otherwise discharge any liability or obligation of Seller whatsoever, or with respect to the Excluded Assets, regardless of whether any such liabilities or obligations are absolute or contingent, liquidated or unliquidated, or otherwise (collectively, the "Excluded Liabilities").

Section 1.03. The Parties recognize that security interests concerning the Excluded Liabilities, set forth on Exbibit B-1, are in place and must be addressed prior to any closing. In this regard, Seller is currently a Debtor in a Chapter 11 bankruptcy case now pending in the U.S. Bankruptcy Court for the Northern District of Texas, Lubbock Division, pending under Case No. 24-50146, and prior to the closing of the sale contemplated by the Agreement, Myer's Drug, as a specific condition of the closing of the sale, shall have approved a Motion to Sell Assets of the Estate Free and Clear of All Liens and Encumbrances approved by the Bankruptcy Court which authorizes the Seller to convey the Myers Drug Assets free and clear of all liens and encumbrances with the liens to attach to the proceeds of the sale ("Bankruptcy Order").

Section 1.04. Purchase Price. The purchase price for the Assets of Myers Drug shall be Six Hundred Thousand and 00/100 Dollars ($600,000.00), which shall be apportioned such that $300,000 is attributable to the prescription files, license, equipment, furniture and fixtures and the purchase price for the inventory of Myers Drug shall be in the estimated sum of $300,000 calculated at the cost of such inventory and such items shall be listed and priced in the amount set forth in Exhibit A-1 as of the Closing.

Section 1.05. Seller acknowledges and agrees that Buyer intends to retain a party of its choice to facilitate the Closing of this transaction (the "Escrow Agent") pursuant to this Agreement. Escrow Agent's responsibilities will include, without limitation, paying off any outstanding liens from the applicable Purchase Price proceeds, and otherwise disbursing the Purchase Price proceeds to facilitate the Closing of this transaction in accordance with the terms of this Agreement. Buyer will otherwise conduct all lien searches and oversee any other investigations necessary to identify all liens against the Assets and Property. This Agreement shall serve as escrow instructions, subject to Escrow Agent's usual conditions of acceptance where not contrary to any of the terms hereof. Escrow Agent is hereby authorized to close this transaction and to make all prorations and allocations which, in accordance with this Agreement, are to be made between the Parties hereto. Closing of the transaction contemplated herein shall take place on or before fourteen (14) days from the expiration of the entry of the Bankruptcy Order ("Closing" or "Closing Date"). It is the intent of the Parties to this Agreement that the closings of the purchase of the Assets be undertaken as quickly as possible following the entry of the Bankruptcy Order.

Section 1.06. AS-IS. As a material part of the consideration for this Agreement, Seller and Buyer agree that the Assets are conveyed, assigned, and transferred by Seller to Buyer "As Is", with all faults and defects, latent and patent, and Buyer acknowledges and agrees Seller has not made, does not make, and specifically disclaims, any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning, or with respect to merchantability or fitness for a particular purpose of the Assets, or any other matter related to or concerning the Assets. Buyer and/or its affiliates and nominees shall not seek recourse against Seller on account of any loss, cost, or expense suffered or incurred by Buyer and/or its affiliates and nominees with regard to any of the matters described in this Agreement. Buyer hereby acknowledges that it, having been given the opportunity to inspect the Assets, are relying solely on their agents' own investigation of the Assets

and not on any information provided or to be provided by or on behalf of Seller or any statement, representation, or other assertion made by Seller. The terms and provisions of this Section shall survive the Closing and any termination of this Agreement.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer, as of the Effective Date and the Closing Date, as follows:

Section 2.01. Organization, Existence, and Good Standing. Seller is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Texas and has all requisite power and authority to carry on its business as now conducted and to own and operate the Assets and Property.

Section 2.02. Authority and Validity of Contemplated Transactions. Seller has full power and lawful authority to execute and deliver this Agreement and to consummate and perform the transactions contemplated hereby. All action on the part of Seller, its officers, members, and managers necessary for the authorization of Seller's execution and delivery of this Agreement, Seller's performance of all obligations hereunder, and Seller's conveyance of the Assets being sold hereunder has been taken or will be taken prior to the Closing Date. This Agreement constitutes the valid and binding obligation of Seller enforceable against Seller in accordance with its terms, subject only to the effect, if any, of (i) applicable bankruptcy and other similar laws affecting the rights of creditors generally and (ii) rules of law governing specific performance, injunctive relief, and other equitable remedies.

Section 2.03. Governmental and Other Approvals. No consent, approval, or authorization of, or registration, qualification or filing with, any United States or State of Texas governmental authority, or any other person, on the part of Seller is required in connection with the consummation of the transactions contemplated by this Agreement, SAVE and EXCEPT Buyer's obligation to obtain the Bankruptcy Order described herein as a condition of the sale.

Section 2.04. Compliance with Laws. Seller has never been and is not now in violation of or in default with respect to any applicable statute, ordinance, rule, regulation, including without limitation (i) the False Claims Act, 31 U.S.C. §§3729 et seq., (ii) the Civil Monetary Penalties Law, 42 U.S.C. §1320a-7a, (iii) any federal or state anti-kickback statutes, including but not limited to 42 U.S.C. 1320a-7b, (iv) federal or state referral laws, including but not limited to 42 U.S.C. §139Snn; (v) regulations promulgated pursuant to any of the foregoing statutes, (vi) any other federal or state law or regulation of general applicability to health care fraud, governing or regulating the management or licensing of health care providers, or governing or regulating medical billing or reimbursement, or (vii) any judgment, writ, injunction or decree of any court of any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, including without limitation Medicare, any state Medicaid program, the Centers for Medicare and Medicaid Services, nor with any rule of any Medicare or Medicaid canier or fiscal intermediary or other government contractor administering federal or state health care programs. Seller is in material compliance with the Health Insurance Portability and Accountability Act of 1996, as amended, the Health Information Technology for Economic and Clinical Health Act, and the regulations promulgated thereunder.

Section 2.05. Inventory and Assets. All Inventory owned by Seller consists of items of a quality and quantity usable and saleable in the ordinary course of business by Seller. All items included in the Inventory are the property of Seller. The Assets are in good operating condition and repair, ordinary wear and tear excepted, and such Assets are the property of Seller.

Section 2.06 Title to Assets; Debts and Liabilities. Except as set forth in the Bankruptcy Order, Seller has good and marketable title, free and clear of all mortgages, liens, and encumbrances to the Myers Drug Assets and Seller has no debts, liabilities, or obligations which will be outstanding on or after the Closing Date following the entry of the Bankruptcy Order granting the right to sell such assets free and clear of all liens and encumbrances.

Section 2.07. No Litigation. Except as set forth herein with respect to the bankruptcy where Seller is currently a Debtor, there are no legal, administrative, arbitration, or other proceedings or governmental investigations currently pending or, to Seller's knowledge, threatened against Seller. Seller has operated and is operating ·in compliance in all material respects with, and has obtained all franchises, licenses, and permits required by, any applicable law, rule, regulation, order, decree, or restrictive covenant applicable to Seller, and no notice of any non-compliance or revocation is pending or threatened.

Section 2.08. Finder or Broker. Seller has no obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which Buyer could become liable or obligated or for which Seller could be liable or obligated subsequent to the Closing Date.

Section 2.09. Full Disclosure. No representation or warranty by Seller in this Agreement or in any document to be delivered to Buyer hereunder, and no statement or certificate furnished or to be furnished to Buyer pursuant hereto or in connection with Buyer and Buyer's agents' investigation into the Property or Assets, or the negotiation, execution or performance of this Agreement, contains or will contain as of the Closing Date any untrue statement of a material fact, or omits or will omit, as of the Closing Date, any material fact necessary to make any statement herein or therein not misleading.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Seller, as of the Effective Date and the Closing Date, as follows:

Section 3.01. Organization, Existence, and Good Standing. Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of Texas and has all requisite power and authority to carry on its business as now conducted and to purchase, own, and operate the Assets and Property.

Section 3.02. Authority to Purchase; Power. Buyer has full power and lawful authority to execute and deliver this Agreement and to consummate and perform the transactions contemplated hereby. This Agreement and the ancillary documents, when executed and delivered by Buyer, will constitute valid and legally binding obligations of Buyer, enforceable in accordance with their respective terms, except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other laws of general application affecting enforcement of creditors' rights

generally and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

Section 3.03. Governmental and Other Approvals. No consent, approval, order, or authorization of, or registration, qualification or tiling with, any United States or State of Texas governmental authority, or any other person, on the part of Buyer is required in connection with the consummation of the transactions contemplated by this Agreement.

Section 3.04. No Violation. Neither the execution and delivery of this Agreement nor the carrying out of the transactions contemplated hereby will result in any violation, termination or modification of, or result in a breach of or constitute a default (or with notice or lapse of time or both would become a default), or give to others any rights, under the terms of any contract, instrument or other agreement to which Buyer is a party or by which Buyer is bound or affected.

Section.3.05. Finder or Broker. Buyer has no obligation to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement for which Seller could become liable or obligated or for which Buyer could be liable or obligated subsequent to the Closing Date.

Section 3.06. Limited Reliance. Buyer acknowledges that (a) except as set forth in this Agreement, Seller is not making (and has not made) any representation or warranty, express or implied, in connection with the transaction contemplated in (and the subject matter of) this Agreement, and (b) Buyer is not relying (and has not relied) upon any representations or warranties, express or implied, made by any person other titan Seller in connection with the transaction contemplated in (and the subject matter of) this Agreement.

## ARTICLE IV
## COVENANTS

Section 4.01. Confidentiality. Prior to and after the Effective Date, the Parties shall not, and shall use their best efforts to cause their respective employees, officers, managers, members, contractors, agents, attorneys, accountants, and representatives not to: (a) use, publish or disclose to any third party any confidential or proprietary information pertaining to the Assets, the Property, this Agreement or the subject matter hereof, or other assets transferred, or to be transferred, from Seller to Buyer at Closing; (b) use, publish or disclose any confidential information concerning either Party which was received in connection with the transactions contemplated herein; or (e) publish or disclose to any third person this Agreement, any drafts of this Agreement, all terms sheets or letters of intent relating to this Agreement, and all terms and conditions of this Agreement; *provided, however,* that the foregoing restrictions shall not apply to information: (i) included in clause (b) above that initially became known to either Party without a confidentiality restriction; (ii) included in clauses (a) or (b) above that is or thereafter becomes lawfully obtainable from other sources not under a confidentiality restriction; (iii) that is necessary to enforce either Party's rights under or defend against a claim asserted under this or any other agreement; (iv) that is necessary or appropriate to disclose to any regulatory authority or governmental agency having jurisdiction over the Parties or as otherwise required by law; (v) that is necessary or appropriate to disclose to a Party's attorneys and/or accountants; or (vi) that is necessary to satisfy a Party's obligations under this Agreement.

Section 4.02. Consents and Approvals. Prior to and after the Effective Date, Seller shall cooperate with Buyer in obtaining all consents, approvals, and authorizations of all persons which are required in order to consummate the transactions contemplated hereby and make all filings with and

give all notices to third Parties which may be necessary or reasonably required in order to consummate the transactions contemplated hereby.

Section 4.03. Compliance with Laws. From the Effective Date, the Parties agree to carry out this Agreement in full compliance with applicable federal and state law governing the provision of health care services, including but not limited to Medicare, Medicaid, and licensure laws, and if for any reason this Agreement, or any portion thereof, is determined to be inconsistent with applicable law, the Parties are relieved of all obligations to perform under the Agreement.

## ARTICLE V
## CLOSING

Section 5.01. The Closing. The closing of the transactions contemplated under this Agreement shall constitute the "Closing". The Closing shall take place electronically via email pursuant to Section 1.05, above, or at such other place and on such other date and time as the Parties may mutually agree in writing.

Section 5.02. Seller's Deliveries. At the Closing, Seller shall deliver, execute and deliver, or cause to be executed and delivered, as applicable, to Buyer the following documents and items:

Physical Transfer of Assets. Seller will deliver possession of the Assets on the applicable Closing Date or at a time mutually agreed upon by the Parties. Concurrently with the transfer of Assets to Buyer, (a) Seller will deliver to Buyer or Escrow Agent a Bill of Sale duly executed and acknowledged in the form attached hereto as Exhibit C and incorporated herein by reference (the "Bill of Sale"); conveying good and marketable fee simple title free and clear of all liens and encumbrances to the Buyer, and upon request of Buyer or the Escrow Agent/Title Company, perform such further acts, assignments, transfers, and assurances as may be reasonably required to convey and transfer all of Seller's right, title and interest in the Assets to Buyer.

Lien Releases. The Bankruptcy Order shall serve as evidence of the release of any and all liens encumbering any of the Assets or Property (including any required UCC termination statements, bank pay-off letters or similar documents).

Seller Resolutions: Each of the following certified by an officer of Seller:

(i) a certificate of the Secretary of State of Texas as of a recent date as to the legal existence of Seller; and

(ii) resolutions adopted by the members of Seller authorizing the execution, delivery, and performance of this Agreement, the ancillary documents, and the consummation of the transaction.

Consents and Approvals: Duly executed copies of al) necessary government approvals regarding this transaction in substantially the form applied for and to the reasonable satisfaction of Buyer, including the Bankruptcy Order referenced herein.

Section 5.03. Buyer's Deliveries. At Closing, Buyer shall sign the documents referred to in Section 5.02 which require Buyer's countersignature and shall deliver the Purchase Price to Seller in accordance with Section 1.03 and Section 5.04.

Section 5.04. Payoff of Indebtedness. The proceeds of the Purchase Price payable to Seller in accordance with Section 1.03 of this Agreement shall go to satisfy outstanding Obligations or debts of Seller as of the Closing Date as shall be more fully described and set forth in the Bankruptcy Order, including those listed on Schedule 2.06. Seller shall deliver to Buyer via the Bankruptcy Order information that: (i) specifies the amount required to be paid to the Creditor to cause the Creditor to release any applicable Obligations or liens on the assets of Seller as of the Closing Date; (ii) provides that upon receipt of such payment, any lien of the Creditor on such assets is automatically released and terminated; and (iii) to the extent a UCC-1 has been filed for any lien, authorizes Buyer or Seller to file a UCC-3 lien termination statement(s) on behalf of the Creditor with the governmental authority or any other applicable jurisdiction evidencing the release of the Creditor's lien on the assets of Seller. The list of Creditors and amounts due shall be set forth on the Closing settlement statement.

Section 5.05. Proceedings and Documents. All actions, proceedings, instruments, and documents required to effectuate this Agreement or incidental hereto and all other related legal matters shall be reasonably satisfactory in form and substance to Seller and Buyer and their respective counsel, and Seller and Buyer shall have received all such counterpart originals of certified or other copies of such documents as it or they may reasonably request.

Section 5.06. Closing Costs. At Closing, Seller and Buyer shall pay or be charged with the following costs and expenses in connection with this transaction:

## ARTICLE VI
## OTHER AGREEMENTS; POST-CLOSING COVENANTS

Section 6.01. Further Assurances; Licenses and Registrations. Each Party, upon request of the other Party, shall execute, acknowledge, deliver, and record such further instruments and do such further acts as may be reasonably necessary, desirable or proper to carry out more effectively the intent and purposes of this Agreement. Additionally, Seller shall use commercially reasonable efforts to cooperate with Buyer in its efforts to notify all applicable regulatory agencies and third Parties, and obtain any licenses, permits, and certifications necessary for Buyer to own the Assets and the Property, at Buyer's sole cost and expense.

Section 6.02. Records. On the Closing Date, Seller will deliver original copies of all Business records, as well as copies of any other relevant documents or records in Seller's possession (collectively, the "Records"), in each case that are required by applicable state or federal law to be maintained onsite in hard copy form to Buyer. To the extent permitted in accordance with HIPAA, the federal regulations published at 45 CFR parts 160 and 164, and other applicable laws, Buyer hereby agrees to make available to Seller, in a form reasonably determined by Buyer, copies of the Records if, after the Closing Date and for a legitimate business reason, Seller requires copies of the Records transferred to Buyer pursuant to this Agreement. Seller agrees that it shall not use the Records for any purpose after Closing, except as required by law, in connection with pending litigation, or the resolution of third-party claims. To the extent the Records are maintained in electronic format, Buyer may elect to convert and transfer all or any portion of such electronic Records. Seller and Buyer will work in good faith to transfer the electronic Records to Buyer in the most effective, efficient, and secure manner.

## ARTICLE VII
## SURVIVAL; INDEMNIFICATION

Section 7.01. Survival. All representations, warranties, and agreements made by the Parties in this Agreement or in any agreement, document, statement, or certificate furnished hereunder or in connection with the negotiation, execution, and performance of this Agreement, unless otherwise stated, shall survive the Closing Date for the applicable statute of limitations.

Section 7.02. Indemnification of Buyer. Seller shall indemnify and hold harmless Buyer and its directors, officers, employees, agents, Affiliates, representatives, successors, and permitted assigns (collectively, the "Buyer Indemnified Persons") from and against any and all claims, demands, actions, causes of action, damage, loss, costs, liability or expense (collectively "Losses") to the extent arising out of: (a) the acts, omissions, or other conduct of Seller occurring or arising prior to Closing, with respect to the Assets; b) any breach or inaccuracy of any representation or warranty of Seller contained in this Agreement or any certificate, Exhibit, or other document executed and delivered by Seller pursuant to this Agreement; (e) any breach of any covenant of Seller contained in this Agreement that is to be performed at or after the Closing; and (d) the Obligations listed on Schedule 2.06.

Section 7.03. Indemnification of Seller. Buyer shall indemnify and hold harmless Seller and his agents, Affiliates, spouse, heirs, executors, administrators, representatives and permitted assigns (collectively, the "Seller Indemnified Persons") from and against any and all Losses to the extent arising out of: (a) the ownership or operation of the Assets; (b) any breach or inaccuracy of any representation or warranty of Buyer contained in this Agreement or any certificate, Exhibit, or other document executed and delivered by Buyer pursuant to this Agreement; or (e) any breach of any covenant contained in this Agreement requiring performance by Buyer or any of its Affiliates prior to the Closing or by Buyer or any of their respective Affiliates after the Closing.

Section 7.04. Method for Claiming Indemnification. In order for a Party to be entitled to any indemnification under this Agreement (the "Indemnified Person") in respect of a claim or demand made by any Person against the Indemnified Person, other than any Income Tax Proceeding or any Tax Proceeding (a "Third Party Claim"), such Indemnified Person must notify (i) Buyer, in the case of indemnification pursuant to Section 7.03, or (ii) Seller, in the case of indemnification pursuant to Section 7.02 (in each case, as applicable, the "Indemnifying Person"), in each case, in writing, and in reasonable detail, of the Third Party Claim as promptly as reasonably possible after receipt, but in no event later than ten (10) Business Days after such Indemnified Person's knowledge of such Third Party Claim; *provided, that,* failure to give such notification on a timely basis shall not affect the indemnification provided hereunder except to the extent the Indemnifying Person shall have been actually and materially prejudiced as a result of such failure. Thereafter, the Indemnified Person shall deliver to the Indemnifying Person, within five (5) Business Days after the Indemnified Person's receipt thereof, copies of all notices and documents (including court papers) received by the Indemnified Person relating to the Third Party Claim; *provided, that,* failure to give such notification on a timely basis shall not affect the indemnification provided hereunder except to the extent the Indemnifying Person shall have been actually and materially prejudiced as a result of such failure.

If a Third Party Claim is made against an Indemnified Person, the Indemnifying Person shall be entitled to participate in the defense thereof and, if it so chooses, to assume the defense thereof at its expense (provided, that, the amount ,of such expense shall be a liability of the Indemnifying Person hereunder subject to the limitations set forth in this Agreement) with counsel selected by the Indemnifying Person and reasonably satisfactory to the Indemnified Person if it gives notice to the Indemnified Person within twenty (20) Business Days after receipt of notice of such Third Party Claim

from the Indemnified Person of its intention to do so; *provided, that,* the Indemnifying Person shall not be entitled to assume or maintain control of the defense of any Third Party Claim if (i) such Third Party Claim relates to or arises in connection with any criminal proceeding, action, indictment, allegation or investigation, or (ii) such Third Party Claim seeks an injunction or similar equitable relief against the Indemnified Person. If the Indemnifying Person does not assume such defense, the Indemnifying Person shall continue to have the right to participate in the defense thereof and to employ counsel, at its own expense, separate from any counsel employed by the Indemnified Person, it being understood that the Indemnified Person shall control such defense. If the Indemnifying Person assumes such defense, the Indemnified Person shall have the right to participate in the defense thereof and to employ counsel, at its own expense, separate from the counsel employed by the Indemnifying Person, it being understood, however, that the Indemnifying Person shall control such defense, and the Indemnified Person shall not be entitled to indemnification for legal expenses subsequently incurred by the Indemnified Person in connection with the defense thereof; *provided, that,* subject to the limitations in this Article VIII, the Indemnified Person shall be entitled to indemnification for the fees and expenses of counsel employed by the Indemnified Person for any period during which the Indemnifying Person has not assumed the defense thereof or if the Indemnified Person has been advised by its outside counsel that there may exist a conflict of interest that would make it inappropriate for the same counsel to represent both the Indemnified Person and the Indemnifying Person. All the Parties that are party to, or an Indemnifying Person with respect to, any Third Party Claim shall cooperate in the defense or prosecution of such Third Party Claim.

Neither the Indemnifying Person nor the Indemnified Person (in either case, the "Settling Party") shall, without the prior written consent of the Indemnified Person or the Indemnifying Person, respectively (the "Non-Settling Party") (such consent not to be unreasonably withheld, delayed or conditioned), settle or compromise any Third Party Claim or permit a default or consent to entry of any judgment with respect to such Third Party Claim unless the claimant and the Settling Party provide to the Non-Settling Party an unqualified release from all liability in respect of such Third Party Claim, (ii) such settlement or compromise does not contain any admission of liability or wrongdoing by such Non-Settling Party, and (iii) such settlement or compromise does not impose any sanctions, restrictions or obligations (including the payment of money damages, unless the Settling Party will be solely responsible for all of such money damages) on the Non-Settling Party.

Section 7.05. <u>Direct Claims.</u> The Indemnified Person shall deliver written notice to the Indemnifying Person promptly upon its discovery of any matter for which the Indemnifying Person may be liable to the Indemnified Person hereunder that does not involve a Third Party Claim (a "Non-Third Party Claim"), which written notice shall also (a) state in reasonable detail the facts and circumstances related to such Loss and the nature of the misrepresentation, breach of warranty or claim to which such Loss is related, (b) that the Indemnified Person has paid or properly accrued Losses or reasonably expects that it will incur liability for Losses for which such Indemnified Person is entitled to indemnification pursuant to this Agreement (and, to the extent known or reasonably calculable, the Indemnified Person's good faith estimate of the amount of its Losses) and (c) the date such item was paid or accrued. The Indemnified Person shall reasonably cooperate and assist the Indemnifying Person in determining the validity of any claim for indemnity by the Indemnified Person and in otherwise resolving such matters. Such assistance and cooperation shall include retaining and providing Seller and bis representatives reasonable access to (y) all books, records and other documents (including work papers, memoranda, financial statements, tax returns, Tax schedules and work papers, Tax rulings, and other determinations, etc.) relating to or containing information relevant to such claim in their possession and (z) Buyer's employees, accountants and other professional advisors.

### ARTICLE VIII
### MISCELLANEOUS

Section 8.01. <u>Notices.</u> Ali notices, waivers, statements and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been effectively given when personally delivered or when deposited in the United States mail, postage prepaid, registered or certified, return receipt requested, addressed to the respective Parties at the following addresses or at such other address as has been designated in writing by either party in accordance with this Agreement with an additional copy furnished by email to the corresponding email address shown below for any recipient:

<u>Seller:</u>


with copy to:

    Micah Pratt
    203 E. 26th St.
    Littlefield, Texas 79339


    David R. Langston
    Mullin, Hoard & Brown, LLP
    1500 Broadway, Suite 700
    Lubbock, Texas 79401
    Email: drl@mhba.com

<u>Buyer:</u>       Pay and Save, Inc
               Attn: Ronnie Rogers

               with copy to:

               Ronnie Rogers
               President and Chief Financial Officer
               1804 Hall Street
               Littlefield, Texas 79339
               Email: ronnier@lowesmarket.com

Section 8.02. Expenses. Except as otherwise provided herein, the expenses incurred by each Party in connection with this Agreement will be paid by such party.

Section 8.03. Amendments. This Agreement may be amended at any time only by mutual written agreement signed by both Parties.

Section 8.04. Binding Effect; Third Party Beneficiaries. This Agreement shall inure to the benefit of, and be binding upon, the Parties. hereto and their respective heirs, successors, and assigns. Nothing in this Agreement shall be construed as creating or giving rise to any rights in any third Parties or any persons other titan the Parties hereto.

Section 8.05. Non-Waiver. No failure by either Party to insist upon the strict performance of any covenant, agreement, term, or condition of this Agreement, or to exercise a right or remedy shall constitute a waiver. No waiver of any breach shall affect or alter this Agreement, but each and every covenant, condition, agreement, and term of this Agreement shall continue in full force and effect with respect to any other existing or subsequent breach.

Section 8.06. Counterparts and Electronic Signatures. This Agreement and any other agreements referred to herein, may be executed in multiple counterparts and all such counterparts taken together shall constitute one and the same instrument. Any counterpart, to the extent signed and delivered by means of .pdf or other electronic transmission, shall be treated in all manner and respects as an original contract and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

Section 8.07. Governing Law. This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Texas, without reference to the choice of law provisions thereof.

Section 8.08. Assignment Neither Party hereto may assign all or any part of its interest, obligations, or rights under this Agreement to any person or entity without the prior written consent of the other party hereto.

Section 8.09. Attorney's Fees. If any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees from the other Party, which fees may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose and which fees shall be in addition to any other relief which may be awarded.

Section 8.10. Gender; Number. Unless the context otherwise requires, the singular number shall include the plural and vice versa, and each gender shall include each other gender.

Section 8.11. Severability. If any one or more of the provisions of this Agreement shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the remaining provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been a part hereof. In addition, the invalid or unenforceable provision shall be modified so as to conform to the greatest extent possible to the original intent of such provision and yet be valid, legal, and enforceable in all respects.

Section 8.12. Independent Counsel. Each Party acknowledges that they have had the opportunity to be represented by separate and independent counsel in the negotiation of this Agreement, that such respective attorney, if any, was of their own choosing, and that they have read this Agreement and understand the legal consequences.

Section 8.13. Presumption Waiver. Each Party waives the presumption that this Agreement is presumed to be in favor of the party which did not prepare it, in case of a dispute as to interpretation.

Section 8.14. Additional Assurances. Except as may be expressly provided to the contrary by this Agreement, the provisions of this Agreement shall be self-operative and shall not require further agreement by the Parties. Provided, however, that at the request of either party, the other party shall execute such additional instruments and take such additional acts as are reasonable and are reasonably necessary to effectuate the terms of this Agreement.

Section 8.15. Entire Agreement This Agreement and the other documents executed in connection with this Agreement, including any exhibits or addenda identified and incorporated by reference herein constitute the entire agreement between the Parties with respect to the subject matter hereof. The Parties expressly acknowledge that, in entering into this Agreement, the Parties rely solely upon the representations and agreements contained in this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties have executed this Asset Purchase Agreement as of the Effective Date.

SELLER:

MP SOUTHPARK PHARMACY, LLC dba MYERS DRUG a Texas limited liability company

_____

Micah Pratt, its Managing Member

BUYER:

PAY AND SAVE, INC., Texas corporation

By: _____

Ronnie Rogers

Its:    President and Chief
        Financial Officer

## EXHIBIT A

Assets

Prescription Files of MP Southpark Pharmacy. LLC dba Myers Drug

Vitamin and Supplements

Home Medical Equipment

Over-the-Counter Products

Pharmaceutical Inventory

Vitamin and Supplement Inventory

HME Inventory

Over-the-counter Inventory

FF&E Associated with Pharmacy, HME, OTC, and Vitamin and Supplements

**EXHIBIT A-1**

**A/R OF MYERS DRUG**

EXBIBIT B

EXCLUDED ASSETS

Excluded Assets of Myers Drug:

Gift Store and Boutique

FFE with Gift Store and Boutique

<u>EXHIBIT B-1</u>

EXCLUDED LIABILITIES

With respect to the Myers Drug Excluded Assets, the following secured liens may survive Closing:

Live Oak Bank
U.S. Small Business Administration -- Economic Injury Disaster Loan
Cardinal Health
Permian Capital

EXHIBIT C

Bills of Sale

(See attached)

# BILL OF SALE

THIS BILL OF SALE is executed and delivered pursuant to the terms of that certain Asset Purchase Agreement dated August 1, 2024, ("Agreement") between MP Southpark Pharmacy, LLC a Texas limited liability company, ("Seller"), and Pay and Save, Inc, a Texas corporation ("Buyer"), for the purchase and sale of Seller's Assets.

All capitalized terms not otherwise defined herein will have the same meanings ascribed to them in the Agreement.

Seller, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby sell, assign, grant, bargain, transfer, convey and deliver to Buyer, its successors and assigns, all of Seller's right, tide and interest in and to the Assets with the exception of all items specifically excluded by the Agreement or disposed of by Seller in accordance with the terms of the Agreement.

Seller hereby represents and warrants that (i) the Assets are free and clear of and from all Liens and encumbrances except the lien of personal property taxes not yet due and payable, (ii) Seller holds good and marketable title to the Assets, (iii) Seller has the right to sell and convey title to the Assets as contemplated herein and in the Agreement, and (iv) Seller, its successors and assigns, will warrant and defend the sale and transfer of title to the Assets to Buyer against the lawful claims and demands of all persons whomsoever.

In addition, Seller hereby assigns and transfers to Buyer any and all warranties relating to the Assets which may be lawfully assigned or transferred.
This Bill of Sale may be executed and delivered by facsimile or electronic mail in portable document format (.pdf).

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed as of this _____day of August, 2024.
[Signature Page Follows)

SELLER:

MP Southpark Pharmacy,
a Texas limited liability company

By: _____
　　　Micah Pratt

Its: Managing Memeber

BUYER:

PAY AND SAVE, INC.,
Texas corporation

By: _____
　　　Ronnie Rogers

Its:　　President and Chief
　　　　Financial Officer