

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 26, 2024**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MP SOUTHPARK PHARMACY, LLC** | § | **Case No. 24-50146-RLJ-11** |
| **d/b/a MYERS DRUG** | § | |
| | § | |
| **Debtor.** | § | |
| | § | |
| **IN RE:** | § | |
| | § | |
| **MICAH G. PRATT and wife,** | § | **Case No. 24-50147-RLJ-11** |
| **KRYSTAN L. PRATT** | § | **(Jointly Administered Under** |
| | § | **Case No. 24-50146-RLJ-11)** |
| **Debtors.** | § | |

### ORDER GRANTING DEBTORS' MOTION TO MODIFY AND CONFIRMING DEBTORS' SMALL BUSINESS CHAPTER 11 PLAN OF REORGANIZATION

On September 19, 2024, Debtors, MP Southpark, LLC d/b/a Myers Drug and Micah G.

Pratt and wife, Krystan L. Pratt (the "**Debtors**"), filed their *Small Business Chapter 11 Plan of*

*Reorganization* (the "**Plan**") [Docket No. 86]. On September 26, 2024, the Court entered its

*Order Setting Hearing on Confirmation of Plan of MP Southpark Pharmacy, LLC d/b/a Myers Drug and Micah and Krystan Pratt and Related Deadlines, With Notice Thereof* (the "**Order Setting Confirmation Hearing**") [Docket No. 87].   The Order Setting Confirmation Hearing established deadlines for soliciting the Plan, voting on the Plan, objecting to confirmation of the Plan, and scheduled an evidentiary hearing on confirmation of the Plan for November 20, 2024 (the "**Confirmation Hearing**"). On September 26, 2024, the Debtors provided to the U.S. Trustee's Office, the Subchapter V Trustee, creditors, and parties-in-interest a copy of the Plan, the Order Setting Confirmation Hearing, and a ballot for accepting or rejecting the Plan. [Docket No. 88].

On November 13, 2024, the Debtors filed their *Ballot Summary of Plan of Reorganization For Debtors* (the "**Ballot Summary**") reflecting the votes received in connection with the Plan [Docket No. 97].

While no formal objections have been filed, Debtors' counsel was contacted by counsel for First Federal Bank ("First Federal") requesting certain language be added to their treatment under the Plan. Counsel for the Debtors was also contacted by counsel for Menard Industrial Development Corp. ("Menard"), whose claim was originally scheduled as unsecured and it has now been determined that their claim should be treated as a secured claim. Debtor's counsel was also contacted by counsel for the IRS who also requested additional language be added to their treatment. The Debtors have agreed to modify the language in the Plan as it relates to First Federal and the IRS and add a secured class for Menard. Additionally, Debtors are revising the language in the treatment to Live Oak Banking ("Live Oak"), Cardinal Health ("Cardinal") and the Small Business Administration ("SBA") to reflect payments received and applied to their

claims since the filing of the Plan.

6.      On November 15, 2024, the Debtors filed their Motion to Modify and Confirm Debtors' Chapter 11 Plan of Reorganization [Docket #99]. This Motion to Modify and Confirm incorporates terms and language requested by Fist Federal, Menard and the IRS, as well as revising language in the treatment to Live Oak, Cardinal and SBA to reflect payments received and applied towards their claims.

At the Confirmation Hearing, the Court considered the testimony of Micah Pratt, Managing Member of MP Southpark Pharmacy and Joint Debtor the presentation, representations, and arguments of counsel for the Debtors, and the comments and recommendations of the Subchapter V Trustee. Additionally, the Court admitted various exhibits, including but not limited to the Liquidation Analysis, the cash flows, and the Ballot Summary.

Based on the Court's review and consideration of: (i) the Plan; (ii) the Ballot Summary; (iii) the exhibits and testimony admitted at the Confirmation Hearing; (iv) the arguments of counsel; and (v) the record before it, the Court makes the following findings of fact and conclusions of law and enters this Order Confirming the Debtor's Plan:

## I.      <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1.      **Findings and Conclusions.**  The findings and conclusions of the Court set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein.

2.      **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the above-captioned Chapter 11 bankruptcy case (the "**Bankruptcy Case**") pursuant to 28 U.S.C. § 1334.

An Order approving the confirmation of a plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Bankruptcy Court has jurisdiction to enter a Final Order on the requested relief.  The Debtors are eligible for relief under Subchapter V of the Bankruptcy Code. Venue of the Bankruptcy Case and Plan is proper in the District and Division pursuant to 28 U.S.C. §§ 1408 and 1409.

**Compliance with Procedural Requirements.**

3.      **Service of Solicitation Materials and Related Information.**  As evidenced by the Certificate of Service filed by counsel for the Debtors [Docket No. 88], Debtors served all appropriate pleadings, notices, ballots, and other documents in accordance with the Order Setting Confirmation Hearing and Bankruptcy Rule 2002.  The Debtors timely and properly served the following: (i) the Plan; (ii) the Order Setting Confirmation Hearing; (iii) voting ballot; and (iv) a cover letter notifying creditors of certain information, (collectively, the "**Solicitation Package**"). Adequate and sufficient notice of the Solicitation Package has been given in accordance with Bankruptcy Rules 2002(b), 3019 and 3020, applicable local rules, and no further notice is required.

**Compliance with Confirmation Standards under §§ 1129, 1191, and Subchapter V of the Bankruptcy Code.**

4.      **The Debtors have Satisfied Its Burden of Proof.**  A plan proponent has the burden to prove the requirements for confirmation by a preponderance of the evidence.  Here, the Debtors have satisfied their burden of proof with respect to confirmation of the Plan.  As set forth in detail below, the Plan fully complies with the applicable provisions of §§ 1129, 1191, and Subchapter V of Chapter 11 of the Bankruptcy Code.

5.     **Compliance with 11 U.S.C. § 1122 – Classification of Claims and Equity Interests.**  In addition to Administrative Claims, Priority Tax Claims and United States Trustee fees, which need not be classified, the Plan classifies Claims and Equity Interests as follows:

| Class | Impaired/Unimpaired |
|---|---|
| Class 4:    Secured Claim of Live Oak Bank | Unimpaired (Claim Paid in Full) |
| Class 5:    Secured Claim of Cardinal Health | Unimpaired (Claim Paid in Full) |
| Class 6:    Secured Claim of SBA | Impaired |
| Class 7:    Secured Claim of Click N Close, Inc. | Unimpaired |
| Class 8:    Secured Claim of Nissan | Unimpaired |
| Class 9:    Secured Claim of Subaru | Unimpaired |
| Class 10:   Secured Claim of First Federal Bank | Impaired |
| Class 11:   Allowed Claims on Student Loans | Unimpaired |
| Class 12:   General Unsecured Creditors | Impaired |
| Class 13:   Secured Claim of Menard Industrial Development | Unimpaired |

6.     The Court finds that valid business, legal, and factual reasons exist for the separate classification of each of the classes of Claims and Equity Interests provided in the Plan, and that there is no unfair or inequitable discrimination between or among the holders of Claims and Equity Interests. All Claims and Equity Interests within each class under the Plan are substantially similar and are afforded equal and reasonable treatment, other than to the extent

that the claimant has agreed otherwise. Accordingly, the classification of Claims and Equity

Interests under the Plan satisfies the requirements of § 1122 of the Bankruptcy Code.

7.     **Compliance with 11 U.S.C. § § 1123(a)(1)-(7) and 1190 – Mandatory

Contents of Plan.**   In accordance with § 1123(a) of the Bankruptcy Code, the Plan:   (1)

designates classes of Claims and Equity Interests, other than Claims of a kind specified in

Bankruptcy Code §§ 507(a)(2), 507(a)(3), or 507(a)(8); (2) specifies any class of Claims and

Equity Interests not impaired under the Plan; (3) specifies the treatment of classes of Claims and

Equity Interests that are impaired under the Plan; (4) provides the same treatment for each Claim

or Equity Interest of a particular class, unless the holder of a particular Claim or Equity Interest

has agreed to less favorable treatment of their Claim or Equity Interest classified thereunder; (5)

provides adequate means for the Plan's implementation by (i) the continuation of the Debtors'

business operations; (ii) provisions for the payment of all Allowed Claims under the Plan; (iii)

provisions for implementation of the Plan; and (iv) general authority for the Debtors to take all

actions necessary or appropriate to effect any transaction necessary or appropriate to effectuate

the Plan; (6) does not involve or include the issuance of non-voting equity securities within the

meaning of Bankruptcy Code § 1123(a)(6), including with respect to any equity security of a

corporate Debtor or Reorganized Debtors; and (7) contains only provisions that are consistent

with the interests of holders of Claims and Equity Interests and with public policy with respect to

the reinstatement of current management, including any officers and directors, as directors of the

Reorganized Debtors.    In addition, the Plan complies with 11 U.S.C. § 1190 by including a

brief history of the Debtors, a liquidation analysis, and projections regarding the Debtors' ability

to satisfy Plan payments. Therefore, the Plan satisfies the requirements of Bankruptcy Code
§§ 1123(a) and 1190.

8. **Compliance with 11 U.S.C. § 1123(b) – Permissible contents of Plan.**
Consistent with § 1123(b) of the Bankruptcy Code, the Plan's provisions are appropriate and not
inconsistent with the applicable provisions of the Bankruptcy Code, including provisions for: (i)
the assumption or rejection and treatment of executory contracts and unexpired leases and
corresponding Claims; (ii) the sale of substantially all of the assets of the estate of the Debtors;
and (iii) treatment of the rights of holders of Claims and Equity Interests. The relief provided in
the Plan is fair, equitable and necessary for the orderly implementation of the Plan and the
administration of the Estate. Therefore, the Plan satisfies the requirements of Bankruptcy Code
§ 1123(b).

9. **Compliance with 11 U.S.C. § 1126 – Acceptance of Plan.** Debtors filed the
Ballot Summary attesting and certifying the results of ballot tabulation for classes of Claims
entitled to vote on the Plan. As indicated in the Ballot Summary, the impaired classes of Class 6,
10 and 12 voted to accept the Plan. The Court finds that votes for acceptance or rejection of the
Plan were solicited in good faith and in compliance with § 1126 of the Bankruptcy Code, the
Order Setting Confirmation Hearing, Bankruptcy Rules 3018 and 3019, other applicable
provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

10. **Compliance with Confirmation Requirements of 11 U.S.C. § 1129(a).** With
respect to compliance with the requirements of § 1129 of the Bankruptcy Code, the Court finds
as follows:

(a)      11 U.S.C. § 1129(a)(1).  The Plan complies with the applicable provisions of the Bankruptcy Code.

(b)      11 U.S.C. § 1129(a)(2).   Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code.  The Debtors are proper debtors under Bankruptcy Code § 1182.  The Plan is in compliance with the sections applicable under Subchapter V as to § 1189 (who may file a plan), § 1122 (classification of claims or interests), §§ 1128, 1129, and 1191 (confirmation of plan) and the Bankruptcy Rules.  The Debtors complied with the Code as to the transmission of ballots and all related documents and notices, and in soliciting and tabulating votes on the Plan.

(c)      11 U.S.C. § 1129(a)(3).   Debtors, their advisors, attorneys, and agents have proposed the Plan in good faith and not by any means forbidden by law.  The treatment of holders of Claims and Equity Interests contemplated by the Plan was negotiated at arms' length, without collusion, and in good faith.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan, and the solicitation of votes to accept or reject the Plan.

(d)      11 U.S.C. § 1129(a)(4).  All payments and distributions made or to be made by the Debtors and all payment terms set forth in the Plan for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to this Bankruptcy Case, have been approved by, or are subject to approval of, this Court as reasonable, unless otherwise ordered by this Court.

(e)      <u>11 U.S.C. § 1129(a)(5)</u>.  The Plan provides for the current officers of the

Debtor to continue to serve as the officers of the Debtor.  The persons that must be

identified pursuant to § 1129(a)(5) of the Bankruptcy Code have been identified in the

Plan, consistent with the interests of Claim and Equity Interest holders and with public

policy.

(f)      <u>11 U.S.C. § 1129(a)(6)</u>.  The Debtors are not subject to any governmental

regulation of any rates and, therefore, § 1129(a)(6) is inapplicable and, thus, satisfied.

(g)      <u>11 U.S.C. § 1129(a)(7)</u>.  The liquidation analysis included in the Plan and

the other evidence related thereto in support of the Plan that was proffered or adduced at

or prior to the Confirmation Hearing are reasonable, persuasive, credible and establish

that each holder of an impaired Claim or Equity Interest against the Debtors either has

accepted the Plan or will receive or retain under the Plan on account of such Claim or

Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less

than the amount that such holder would so receive or retain if the Debtors were liquidated

under chapter 7.

(h)      <u>11 U.S.C. § 1129(a)(8)</u>.  Classes 6. 10 and 12 of the Plan are impaired and

entitled to vote. Classes 6, 10 and 12 voted to accept the Plan. Based on the tabulation of

ballots submitted to the Debtors on the Plan, all classes of impaired Claims voted to

accept the Plan. Therefore, the Debtor has satisfied § 1129(a)(8).  Class 4 and 5 consisted

of the claims of Live Oak Banking and Cardinal Health.  The claims were paid in full

prior to confirmation from proceeds from the sales of the Pratt II real property and

personal property of MP Southpark Pharmacy.  Therefore, they no longer have claims and are no longer required to vote and were not tabulated in the Ballot Summary.

(i)      11 U.S.C. § 1129(a)(9).   The Plan's treatment of Claims of a kind specified in Bankruptcy Code § 507(a)(1) through (8) satisfies the requirements set forth in § 1129(a)(9) of the Bankruptcy Code.

(j)      11 U.S.C. § 1129(a)(10).  The Plan satisfies the requirements of § 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Ballot Summary impaired Classes 6, 10 and 12 have voted to accept the Plan in accordance with § 1126 of the Bankruptcy Code. None of the creditors in Classes 6, 10 and 12 are insiders of the Debtors. The Debtors have satisfied the requirements of § 1129(a)(10) of the Bankruptcy Code. Class 4 and 5 consisted of the claims of Live Oak Banking and Cardinal Health. The claims were paid in full prior to confirmation from proceeds from the sales of the Pratt II real property and personal property of MP Southpark Pharmacy.  Therefore, they no longer have claims and are no longer required to vote and were not tabulated in the Ballot Summary.

(j)      11 U.S.C. § 1129(a)(11).   The Plan satisfies the requirements of § 1129(a)(11) of the Bankruptcy Code.  The Plan provides for the continued operations of the Debtors and for the Debtors to make payments on allowed claims as provided in the Plan.  The Debtors' cash flows admitted into evidence demonstrate the Debtors will be able to make their Plan payments. The Plan is feasible and confirmation of the Plan is not likely to be followed by the liquidation (unless provided for by the Plan), or the need for further financial reorganization of the Debtors or the Reorganized Debtors or any successor

thereto under the Plan; and establish that the Reorganized Debtors will have sufficient funds available to meet its obligations under the Plan.  Therefore, confirmation of the Plan is not likely to be followed by the need for further reorganization of the Debtors.

(k)     11 U.S.C. § 1129(a)(12).  The Debtors have paid or will pay on the Effective Date, or upon their approval by the Court, all chapter 11 statutory and operating fees, if applicable, including Subchapter V Trustee fees required to be paid under Subchapter V during this Bankruptcy Case and will file all required fee statements.

(l)     11 U.S.C. § 1129(a)(13).  The Debtors do not have or maintain a pension plan or "retiree benefits" plan as that term is defined in § 1129(a)(13) of the Bankruptcy Code and, therefore, § 1129(a)(13) of the Bankruptcy Code is inapplicable.

(m)     11 U.S.C. § 1129(a)(14) – (16).  The provisions of §§ 1129(a)(14), (a)(15), and (a)(16) of the Bankruptcy Code are not applicable to the Debtors' Bankruptcy Case. The Debtors (a) are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, (b) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor, and (c) all transfers of property under the plan were made in accordance with the applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed business or commercial corporation.

11.    **Compliance with 11 U.S.C. § 1191(a).**  The Court finds that all applicable requirements of § 1129(a), other than paragraph (15), have been satisfied. Therefore, the Court finds that the Plan can be confirmed pursuant to § 1191(a).

12.     **Compliance with 11 U.S.C. § 1129(c).**   The Bankruptcy Case is under Subchapter V, and, as such, this section of the Bankruptcy Code does not apply.

13.     **Compliance with 11 U.S.C. § 1129(d).**   The Court finds that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

14.     **Not Small Business Cases 11 U.S.C. § 1129(e).**   The Bankruptcy Case is under Subchapter V, and, as such, this section of the Bankruptcy Code does not apply.

15.     **Satisfaction of Confirmation Requirements.**   Based upon the foregoing, all other pleadings, documents, and exhibits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, admitted, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in §§ 1129(a) and 1191(a) of the Bankruptcy Code.

16.     **Executory Contracts and Unexpired Leases.**   The Debtors have exercised sound business judgment in determining whether to assume or reject each of its executory contracts and unexpired leases pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code, and the Plan.  Each assumption of an executory contract or unexpired lease pursuant to the Plan, shall be legal, valid, and binding upon the Debtors or Reorganized Debtors and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or unexpired lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Court under Bankruptcy Code § 365 entered before entry of this Confirmation Order.  The Debtors have cured or provided adequate assurance that the Debtors or their successors and assigns, as applicable, will cure defaults (if any) under or relating to each of the

executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the

Plan.

**BASED UPON THE ABOVE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

17.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated herein by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable through Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

18.    **Confirmation of the Plan.**  The Plan proposed herein is hereby confirmed pursuant to 11 U.S.C. § 1191(a).  The documents contained in or contemplated by the Plan, are authorized and approved.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

19.    **Objections.**  All objections to Confirmation of the Plan and other responses, comments, statements, or reservations of rights, if any, in opposition to the Plan have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order.  To the extent any objections, reservations of rights, statements, or joinders to confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Court.

20.    **Effective Date.**  The Effective Date of the Plan is the day that is the first business day after the thirtieth (30th) day following the date when the Confirmation Order becomes a final,

non-appealable order.  If, however, a stay of the Confirmation Order is in effect on that date, the

Effective Date will be the day after the date on which the stay expires or is otherwise terminated.

These are calculated as provided in Fed. R. Bankr. P. 9006(a)(1).

21. **Amendments/Modifications to the Plan.**  As announced on the record, the Plan

is modified as set forth in the Motion to Modify and Confirm filed by Debtors on November 15,

2024 [Dkt. #99]. In said Modification the treatments afforded the claims of Live Oak, Cardinal

and SBA have been modified to reflect the receipt of sales proceeds received and applied to their

claims since the filing of the original Plan and are modifying the treatment of First Federal, the

IRS and Menard to conform with agreements counsel for the Debtors has reached with their

attorneys and as set forth as follows:

(a) The Plan adds the following provisions regarding the treatment and payment of

the priority claim of the Internal Revenue Service ("IRS") (Claim No. 6):

**MP Southpark Pharmacy:**

*Internal Revenue Service* – The IRS filed a second Amended Proof of Claim No. 6 in the
total amount of $61,111.97. The IRS asserts that of the $61,111.97 owed to them, $12,072.42
(the "**MP IRS Priority Claim**") is entitled to priority under 11 U.S.C. § 507(a)(8). The Priority
Claim consists of an estimated tax liability in the total amount of $12,072.42 (the "Estimated
Amount"). The Estimated Amount relates to interest on unpaid FICA taxes for 2022 – 2023. The
Debtor has now filed its 2022 and 2023 tax returns, and have agreed to pay the MP IRS Priority
Claim in accordance with the provisions allowed debtors under Subchapter V of the Bankruptcy
Code.

Nevertheless, should the Debtors be liable for any employment taxes for 2024 or prior
years, the Debtors will remain current with all of its post-confirmation federal tax obligations,
including making deposits and payments and filing all returns, during the period the Debtors are
required to make payments under the Plan. A failure to make post-confirmation tax deposits,
payments, and filings in a timely fashion, as required by the Internal Revenue Code, shall be
deemed a default under the terms of the Plan. The Debtors shall be allowed a fifteen (15) day
grace period with respect to the timeliness of these obligations before being deemed a default of
the Plan. The Debtors shall have the right to cure any default within twenty (20) days of written

notice by the IRS of a default for failure to comply with its post-confirmation tax obligations.

Failure on the part of the Debtors to pay fully when due any payment required to be made in respect of the Plan shall be considered a default under the Plan. In the event of default, the IRS shall give written or telephonic notice to the Debtors and Debtors' counsel, and the Debtors shall have fifteen (15) days from the notice date to cure or otherwise establish there has been no default.  In the event the default is not cured and due to the size and ongoing nature of the IRS's claim, the administrative collection powers and rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code.

The Debtor, MP Southpark Pharmacy, will continue to sell all of its assets and the Company will file its final return for income taxes and employment taxes and then the Company will cease to exist. A formal termination and Certificate of Termination of the entity will be filed with the Texas Comptroller and with the Texas Secretary of State.

(b)       The Plan modifies the treatments afforded the claims of Live Oak, Cardinal and

SBA to reflect the receipt of sales proceeds received and applied to their claims since the filing

of the original Plan:

4.       <u>Class 4 –Secured Claim of Live Oak Banking Company</u>

Live Oak Banking Company ("**Live Oak**") filed Proof of Claim No. 7 (MP Southpark) and Proof of Claim #5 (Pratt) in the total amount of $1,333,049.37. Live Oak's secured claim consists of a first lien security interest in real property owned by Debtor's affiliate, Pratt II Real Estate, LLC ("Pratt II") having an approximate value of $1,000,000.00 and a first lien security interest in Debtor's personal property assets having an approximate value of between $600,000.000 to $1,000,000.00 as of the Petition Date.

The Debtor's affiliate, Pratt II filed a Motion For Authority to Sell Real Property of the Estate Free and Clear of Liens [Dkt. #40] and an Order granting the Motion was entered on September 9, 2024 [Dkt. # 50] which authorized Pratt II to sell the real property to Joseph Stone Thieman GST Trust c/o Texas State Bank for the total sum of $1,300,000.00.  Additionally, Debtors filed a Motion For Authority to Sell Personal Property Assets of the Debtor [Dkt. #66] and an Order granting the Motion was entered on September 9, 2024 [Dkt. #82], which authorized the Debtors to sell the personal property assets of MP Southpark Pharmacy to Pay and Save, Inc. d/b/a Lowe's Grocery Stores for a total sales price of $600,000.00.

Both the sale of the real property and the sale of the personal property have now closed and Live Oak has received payment in full of its secured claim.

     5.     <u>Class 5 –Secured Claim of Cardinal Health</u>

Cardinal Health ("Cardinal") holds a secured claim in the approximate amount of $97,888.44. Cardinal Health ("**Cardinal**") filed Proof of Claim No. 8 (MP Southpark) and Proof of Claim #11 (Pratt) in the total amount of $2,081.44 and has post-petition administrative claims subject to the replacement lien in favor of Cardinal for $95,807.00. Cardinal's secured claim consisting of a second lien security interest in MP Southpark inventory, machinery, and equipment, etc. is secured by personal property having an approximate value of between $600,000.000 to $1,000,000.00 as of the Petition Date.

The sale of the real and personal property has closed and the claim of Live Oak was paid in full. After the payment to Live Oak, there were funds remaining and the claim of Cardinal in the amount of $92,246.92 was paid in full out of the net proceeds realized by the purchase of the personal property by Pay and Save, Inc.

     6.     <u>Class 6 –Secured Claim of United States Small Business Administration</u>

The United States Small Business Administration ("**SBA**") filed Amended Proof of Claim No. 4 (MP Southpark) in the total amount of $521,191.56 secured by a third lien on the personal property assets of MP Southpark Pharmacy and Amended Proof of Claim No. 9 (Pratt) in the total amount of $518,034.50. SBA's secured claim consists of a promissory note executed by the Debtor, MP Southpark, and guaranteed by Pratt, in favor of SBA, secured by third lien security interest in Debtor, MP Southpark's, personal property having an approximate value of between $600,000.000 to $1,000,000.00 as of the Petition Date. The second Proof of Claim (#9) in the total amount of $518,034.50 is an unsecured deficiency claim guaranteed by Micah Pratt individually.

After the application of the net proceeds realized by MP Southpark Pharmacy, LLC out of the sale to Pay and Save, Inc. paid to Live Oak and to Cardinal, the remaining net proceeds in the amount of $230,539.67 were paid to SBA to be applied toward the debt owed by MP Southpark Pharmacy, LLC. Following this payment SBA will continue to hold a security interest against the personal property assets of MP Southpark and will continue to receive funds from the sale of additional assets, including inventory of the gift shop and other personal property, along with any funds collected from outstanding accounts receivable that may come in. Any remaining debt remaining after application of these funds shall be treated as a General Unsecured Claim with the other Allowed General Unsecured Creditors in Class 12 of the Plan. Proof of Claim #9 in the amount of $518,034.50 is a General Unsecured Claim as well and is entitled to treatment under Class 12 as well.

     (c)     The Plan adds the following provisions regarding the treatment and payment of

the secured claim of First Federal Bank (Claim No. 15):

<u>Class 10 – Secured Claim of First Federal Bank</u>

First Federal Bank Littlefield, Texas ssb ("First Federal") filed a Proof of Claim No. 15 in the total amount of $89,372.32. First Federal's claim is secured by an assignment of a Penn Mutual Whole Life Insurance Policy having an estimated net surrender value of approximately $73,595.67. First Federal is also claiming a right of setoff of a checking account at First Federal belonging to Debtors.

The Debtors intend to surrender the policy and pay over or direct Penn Mutual Whole Life Insurance Policy to pay over any funds to which the Debtors are entitled to First Federal pursuant to the collateral assignment. The payment of the funds under this section shall be made directly to First Federal or to the account of Debtors at First Federal. The parties agree to work together to effectuate payment of the funds as soon as practicable. Debtors agree to execute all such documents as may become necessary to effectuate payment of the life insurance funds to First Federal.

The Debtors will further surrender the account at First Federal and the full balance therein, approximately $10,761.37, to First Federal for an additional setoff of First Federal's claim as authorized in the promissory note.

Any remaining unsecured deficiency claim of First Federal after payment of the life insurance funds and setoff funds on deposit at First Federal, will be treated as a General Unsecured Claim and paid pro rata along with claims of other General Unsecured Creditors in Class 12.

(d)    The Plan adds the following provisions regarding the treatment and payment of

the secured claim of Menard Industrial Development Corp. (Claim No. 9):

<u>Class 13 – Menard Industrial Development Corp.</u>

Menard Industrial Development Corp. ("Menard") filed a Proof of Claim No. 9 in the total amount of $20,542.21. Menard's claim is secured by a lien against Debtor's Warren Computers computer system, computer RX pharmacy software, the Myers Drug phone system and Telepharm software all located in Menard County, Texas.

Pay and Save, Inc. agreed to buy back the computer system from Menard for a total price of $5,000 which was be applied to the debt owing. Any remaining unsecured deficiency claim will be treated as a General Unsecured Claim and paid pro rata along with the claims of other General Unsecured Creditors in Class 12.

(e)    All other provisions of the Plan remain in effect.

22.    **Plan Implementation.**

(a)   In accordance with § 1142 of the Bankruptcy Code, without further action by the Court or the equity holders, managers, officers, or directors of the Debtor, and its representatives, attorneys, professionals, and agents are authorized to: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan and this Confirmation Order, and the transactions contemplated thereby or hereby, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, agreements, and documents necessary to implement, effectuate and consummate the Plan.

(b)   Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, including:   (i) the assumption or rejection, as appropriate, of any executory contracts and unexpired leases, and (ii) entry into any contracts, instruments, agreements, and documents necessary to implement, effectuate, and consummate the Plan, shall be effective prior to, on, or after the Effective Date pursuant to this Order, without further notice, application to, or order of this Court, or further action by the respective managers, officers, directors, members, or equity holders of the Debtor.

(c)   To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of the Debtor, this Confirmation Order shall, pursuant to § 1142 of the Bankruptcy Code, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, managers, members, and equity holders of the appropriate Debtor, as applicable.

23.    **No Action Required**.  No action of the respective directors, boards of directors, equity holders, managers, officers, or members of the Debtor is required to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, and any transaction, contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

24.    **Effectiveness of All Actions.**  All actions contemplated by the Plan are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtor and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

25.    **Binding Effect.**  Pursuant to § 1141 of the Bankruptcy Code, on the date of and after entry of this Confirmation Order, subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or otherwise, this Confirmation Order and the Plan and each of its provisions shall be binding upon and inure to the benefit of:  (i) the Debtors; (ii) all persons acquiring or receiving property or a distribution under the Plan; (iii) any present or future holder of a Claim against or Equity Interest in the Debtor, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity accepted the Plan; (iv) any other party in interest; (v) any and all non-Debtor parties to Debtor executory contracts and unexpired leases; (vi) any person making an appearance in this case; (vii) any entity receiving notice of these Chapter 11 proceedings; and

(viii) any heirs, successors, assigns, trustee, executors, administrators, affiliates, directors, agents, representatives, attorneys, beneficiaries or guardians of the foregoing. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

26.     **Continued Existence of the Debtor.**  On the Effective Date, the Debtors shall continue to exist and operate its business in the ordinary course to make the payments called for in the Plan.

27.     **Debtors' Actions Post-Confirmation Through the Effective Date.**  During the period from entry of this Confirmation Order through and until the Effective Date, the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

28.     **Preservation of Causes of Action.**  The Debtors expressly reserve all rights to prosecute any and all of their respective causes of action against any person, except as expressly provided in the Plan.  Unless any causes of action are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor expressly reserves all of its respective causes of action for later adjudication.

29.     **Executory Contracts and Leases.**  The Debtors have satisfied the requirements of Bankruptcy Code §§ 365(b)(1) and 365(f)(2).

30.     Entry of this Confirmation Order shall constitute approval of the assumptions and rejections provided for in the Plan, including any amendments agreed to by the Debtors during the Bankruptcy Case to any executory contracts or unexpired leases being assumed by the

Debtor, pursuant to § 365(a) and 1123 of the Bankruptcy Code and a determination by the Court

that the Debtors have provided adequate assurance of future performance under such assumed

executory contracts and unexpired leases.

31.     **Administrative Claims.**  In accordance with Article IV, Section A of the Plan, all

administrative expenses allowed under § 503 of the Bankruptcy Code will be paid consistent

with sections 1129(a)(9)(A) or section 1191(e) of the Bankruptcy Code, including approved fees

and expenses of Behrooz Vida, Subchapter V Trustee. Upon approval of the Trustee's fees and

expenses, and after application of all funds the Trustee holds in trust, the Debtors shall pay out

his remaining fees and expenses in equal monthly installments of $2,000 per month until he is

paid in full. The first payment shall be due and payable on the 5th day of the first full month after

any order of this Court approving the Trustee's fees and expenses has become final.

32.     **Discharge.**  On the Effective Date, Debtors shall be and are hereby discharged to

the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtors will not be discharged

of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C.

§ 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtors are individuals; and (iii) to the extent

provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

33.     **Retention of Jurisdiction.**   The Court confirming the Plan may exercise

jurisdiction to the full extent necessary to administer this case after Plan confirmation and to

adjudicate any related adversary proceedings or contested matters, including those relating to the

Plan, such as concerning the Plan's construction, implementation, or modification. Neither this

provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction

authorized by title 28 of the United States Code.

34.     In accordance with the Bankruptcy Rules 2002 and 3020(c), not later than 10 business days after the Confirmation Order is final and no longer subject to appeal, the Debtors shall serve the notice of confirmation of the Plan and file and serve a notice of the Effective Date providing the specific date of the Effective Date.

35.     **Property of the Estate.**   Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all the property of the Estate vests in the Debtors. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtors shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

36.     **Substantial Consummation.** No later than 14 days after the Plan is substantially consummated, the Debtor shall file with the Court and serve upon the Trustee, U.S. Trustee, and all parties in interest, notice of substantial consummation of the Plan as provided under 11 U.S.C. § 1183(c)(2).

37.     **Severability.**  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

38.     **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of

Texas govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

39.     In the event of a conflict between the terms of this Confirmation Order and those of the Plan, the terms of this Confirmation Order shall control.

40.     This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof. The 14-day automatic stay of Rule 3020(e) is waived.

###END OF ORDER###

**APPROVED AS TO FORM AND CONTENT
AND ENTRY REQUESTED:**

MULLIN HOARD & BROWN, L.L.P P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
e-mail: drl@mhba.com

    /s/ David R. Langston
_____
David R. Langston, SBN: 11923800
***Attorneys for Debtors, MP Southpark Pharmacy, LLC
and Micah and Krystan Pratt***